IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM M. DEXTER,                    :

     Plaintiff,                       :

v.                                    : CIVIL ACTION 12-0355-WS-M

ROBERT SMITH, et al.,                 :

     Defendants.                      :

## REPORT AND RECOMMENDATION

Plaintiff, a former Alabama prison inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment.  (Doc. 22).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's claims against Defendants be dismissed.

## I.  SUMMARY OF ALLEGATIONS

Much of Plaintiff's complaint is not only difficult, but impossible, to decipher.  However, the Court has been able to discern the following relevant alleged facts:  On November 11, 2011, Plaintiff was arrested and taken to Mobile County Metro Jail ("Metro Jail").  (Doc. 1, p. 4).

At the time of his arrest, Plaintiff was taking Seroquel and Geodon,[1] which he claims have "a tendency to cause constipation." (Id.) Plaintiff claims that he had been prescribed "Lactolose (laxative)" to be taken as needed. (Id.) Plaintiff was put in "the suicide cell and told he wasn't taking ANY medications and the constipation began." (Id.) He also claims that he became constipated in the suicide cell when 7 sheriffs put a 6'6" 280 pound inmate in the cell with him who was unstable and raving for ten to fifteen minutes before he was taken out. (Id.) Plaintiff claims that he filled out several sick slips requesting a laxative, but the unidentified nurse and medical "facility" were "passive" about him "begging for a laxative." (Id. at p.6). Plaintiff claims that he had an internal rupture on December 22, 2011, the day he appeared in Probate Court and was transferred to Searcy Hospital.[2] (Id.) He claims that he took his underwear which was filled with blood to the "commissary people" and that they gave it to a guard who

---

[1] Seroquel and Geodon are atypical antipsychotic drugs approved for the treatment of schizophrenia and bipolar disorder.

[2] Plaintiff has submitted no evidence in support of this claim, and the records submitted by Defendants show no indication of Plaintiff suffering "an internal rupture." (Doc. 17). The Court notes, on the other hand, that the records submitted by Defendants do show that Plaintiff has suffered from schizoaffective disorder and delusions for a number of years. (Doc. 17).

put it in with the laundry.  His underwear was left behind at the jail when he was moved to Searcy later that day. Plaintiff also avers that he was "chemically addicted" to Seroquel and Geodon and that he was not provided these medications by Metro Jail, which caused him "a torment of no sleep of 6 days and 5 nights in the suicide cell, with un-stable [sic] people."  (Id.)  The remainder of the allegations either relate to Plaintiff's treatment at Searcy Hospital or are not relevant to his claim against the named Defendants.

The relief requested by Plaintiff is "check cash award $2,225,000.00 Dollars – attorney fee's paid, cost, medical & doctor's (private) fee's surgery if applicable.  "writ for body" balance of funeral expenses if applicable. FRAZIER 1966-1968.  1989 "State sanction" Brevard Hand corpus stelicti "hasn't been perfected"  Magnolia & Pine Crest."  (Doc. 1, p. 12).  The Court can only interpret this to mean that Plaintiff requests money damages.

On May 17, 2012, Plaintiff filed his Prisoner Complaint [For Inmate Action] Under 42 U.S.C. § 1983. (Doc. 1).  Based upon the foregoing facts, it appears that Plaintiff seeks relief from Defendants based upon his belief that they violated his constitutional rights by failing to provide him adequate medical treatment and by

placing an unstable inmate in his cell for ten to fifteen
minutes.  In their Answer and Special Report, Defendants
Oliver and Haley[3] deny Plaintiff's claims and assert the
affirmative defenses of Eleventh Amendment immunity,
sovereign immunity, and qualified immunity.  (Docs. 15 and
21).  Plaintiff and Defendants have filed several
additional documents which the Court has reviewed (Docs.
11, 13, 17, 19, and 23).  On October 29, 2012, the Court
filed an order converting Defendants' Special Report to a
motion for summary judgment.  (Doc. 22).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that
summary judgment shall be granted "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A factual dispute is genuine "if
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material

---

[3] As discussed herein, because Oliver and Haley were the only
Defendants to be specifically named in the body of the
complaint, they were the only Defendants who were served
with the complaint.

if it "might affect the outcome of the suit under the governing [substantive] law." Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Moreover, "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fitzpatrick v. City of

<u>Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993); <u>Tipton</u>, 965 F.2d at 998-99.   In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial.  See <u>Fitzpatrick</u>, 2 F.3d at 1116.

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))(emphasis omitted).  Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," <u>Anderson</u>, 477 U.S. at 255, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587.

Moreover, the non-movant "bears the burden of coming forward with sufficient evidence on <u>each</u> <u>element</u> that must

be proved." <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990).  If "a party...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

<u>III.  DISCUSSION</u>

In this action, Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).  Specifically, Plaintiff alleges that the failure of certain unnamed persons at Metro Jail to provide him with a laxative constituted cruel and unusual punishment.[4]  He also alleges that Defendants

---

[4] Because Plaintiff was apparently a pretrial detainee at the time the acts giving rise to this claim occurred, his claim

7

violated his constitutional right to be free from cruel and
unusual punishment when certain unnamed correctional
officers put an offensive inmate in his cell for ten to
fifteen minutes.  Plaintiff seeks only monetary damages.
(Doc. 1, p. 12).

## A.  DEFENDANTS NAMED IN CAPTION

     Plaintiff named the following defendants in the
caption of his complaint:  "Robert Smith Judge, Medical
Staff M.D. Mobile Metro Jail, Searcy Hospital, State of
Alabama."  Plaintiff's complaint against these Defendants
is due to be dismissed without being served for several
reasons.  The instructions on the first page of the form
complaint used by Plaintiff clearly state that "[t]he
persons who are listed as defendants in section III of the
complaint are deemed by the Court to be the **only** defendants
to this action."  (Doc. 1, p.1) (emphasis added).  With the

---

alleging cruel and unusual punishment sounds properly in
the Fourteenth Amendment right to due process rather than
in the Eight Amendment.  See Taylor v. Adams, 221 F.3d
1254, 1257 n.3 (11th Cir. 2000); Lancaster v. Monroe
County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Hale v.
Tallapoosa County, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995);
Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir.
1985).  Nevertheless, his claim that Defendants were
deliberately indifferent to a substantial risk of serious
harm is analyzed the same regardless of whether it arises
under the Due Process Clause of the Fourteenth Amendment or
under the Eighth Amendment.  Id.  Accordingly, the Court
can rely upon both Eighth Amendment and Fourteenth
Amendment cases in ruling upon Defendants' Motion for
Summary Judgment.  Id.

exception of "Medical Staff" at Mobile Metro Jail, none of these Defendants is listed as a defendant in section III of Plaintiff's complaint.  (Doc. 1, p. 5).

In addition, as to Robert Smith Judge, Plaintiff has made absolutely no claims against him in the complaint. Therefore, he is not a proper party to this action. Likewise, the State of Alabama and Searcy Hospital are not proper parties.  The State of Alabama is clearly immune from suits for monetary damages.  Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998).  Searcy Hospital was a state owned and operated hospital; therefore, it is also immune from suits for monetary damages.  See Ala. Const. art. I, § 14, Ala. Code § 22-50-15 (1975), Ex parte Alabama Dep't of Mental Health & Mental Retardation, 837 So. 2d 808, 811 (Ala. 2002).  Finally, there is no such legal entity as "Medical Staff" of Mobile Metro Jail.  A plaintiff cannot sue an entity that does not exist, nor can a plaintiff sue a county jail.  See, e.g., Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (holding that "sheriff's department's lack the capacity to be sued").

## B. CLAIMS AGAINST OLIVER AND HALEY

Even though Plaintiff did not name Haley or Oliver as Defendants in the caption of his complaint, he did

designate them in section III.  Plaintiff named Michael
Haley as the warden of Metro Jail.  However, Michael Haley
was not employed at Metro Jail between November 11 and
December 22, 2011.  (Doc. 21, p. 6).  Therefore, Haley is
clearly entitled to summary judgment in his favor.

Plaintiff has not indicated whether he is suing
Defendant Oliver, the warden at Metro Jail, in his official
or individual capacity.  Assuming Plaintiff intended to sue
Oliver in his official capacity, that claim would fail.
The Eleventh Amendment, which specifically prohibits suits
against "the United States by Citizens of another State, or
by Citizens or Subjects of any Foreign State," has long
been held to apply "equally to suits against a state
brought in federal court by citizens of that state."
Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th
Cir. 1998).  "The state need not be formally named as a
defendant for the amendment to apply; state officials sued
in their official capacity are also protected by the
amendment."  Id. (citing Kentucky v. Graham, 473 U.S. 159,
166-67 (1985)). "Section 1983 provides a federal forum to
remedy many deprivations of civil liberties, but it does
not provide a federal forum for litigants who seek a remedy
against a State for alleged deprivations of civil

liberties." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).

"[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." <u>Turquitt v. Jefferson County</u>, 137 F.3d 1285, 1288 (11th Cir.), <u>cert. denied</u>, 525 U.S. 874 (1998).  It is well settled in this circuit that Alabama sheriffs are executive officers of the state and that a suit against a sheriff in his official capacity is the equivalent of a suit against the state.  <u>See</u> <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989).  "[T]he state is considered the real party in interest because an award of damages would be paid by the state." <u>Carr v. City of Florence</u>, 916 F.2d 1521, 1524 (11th Cir. 1990).  Accordingly, suits against Alabama sheriffs in their official capacities are generally barred by the Eleventh Amendment.  <u>See</u> <u>Taylor v. Adams</u>, 221 F.3d 1254, 1256 (11th Cir. 2000); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1429 (11th Cir. 1997); <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); <u>Free</u>, 887 F.2d at 1557.  In <u>Lancaster</u>, this immunity was extended to correctional officers employed by county sheriffs. <u>Lancaster</u>, 116 F.3d at 1429-31.

The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against state

officials sued in their official capacity.  The first
exception is when a state has waived its Eleventh Amendment
sovereign immunity and has consented to suit in federal
court.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234,
238 (1985).  This exception does not apply here, however,
because the State of Alabama has not waived its immunity to
suit in § 1983 cases.  See Alabama v. Pugh, 438 U.S. 781,
782 (1978).  The Alabama Constitution explicitly states
that "the State of Alabama shall never be made a defendant
in any court of law or equity."  Ala. Const. Art. I, § 14.
The second exception is when Congress has properly
abrogated sovereign immunity through its powers under the
Fourteenth Amendment; however, such an abrogation has not
occurred with respect to § 1983 claims.  Seminole Tribe of
Fla. v. Florida, 517 U.S. 44, 55-73 (1996); Carr, 916 F.2d
at 1525.  Lastly, under the doctrine of Ex parte Young, the
Eleventh Amendment does not bar § 1983 actions against
state officials which seek prospective injunctive relief to
end continuing violations of federal law.  See Ex parte
Young, 209 U.S. 123, 155-56 (1908); see also Seminole Tribe
of Fla., 517 U.S. at 73 (quoting Green v. Mansour, 474 U.S.
64, 68 (1985)); Summit Med. Assoc. v. Pryor, 180 F.3d 1326,
1336 (11th Cir. 1999).  As noted in Summit Medical,
"[b]ecause of the important interests of federalism and

state sovereignty implicated by Ex parte Young ... the
doctrine is not without limitations." 180 F.3d at 1337.
One limitation, which is relevant to this action, is that
"the Ex parte Young doctrine applies only to ongoing and
continuous violations of federal law." Id.(citing Papasan
v. Allain, 478 U.S. 265, 277-78 (1986)); see infra p. 10.
[A] plaintiff may not use the doctrine to adjudicate the
legality of past conduct." Id.

Applying the foregoing tenets of law to the instant
case, it is clear that Plaintiff's claim for monetary
relief against Oliver, in his official capacity, is due to
be dismissed. Oliver is the warden of Metro Jail. He
clearly represents the state with regard to his duties
concerning the operation of Metro Jail. The Court finds
that any claim made by Plaintiff against Oliver in his
official capacity concerns duties he was entrusted to
perform on behalf of the state; therefore, he is entitled
to Eleventh Amendment immunity from Plaintiff's claim for
monetary damages. See, e.g. Lancaster, 116 F.3d at 1429-30
(holding that jailers are state officials entitled to the
same Eleventh Amendment immunity as the sheriff because
they are responsible to the sheriff for their performance
of state-mandated duties.) Accordingly, any claim for

monetary damages asserted by Plaintiff against Oliver, in his official capacity, is due to be dismissed.[5]

Thus, the only potential claim Plaintiff has asserted against Oliver is a § 1983 action against him in his individual capacity.  In his complaint, Plaintiff states that he is pursuing this action against Oliver for medical neglect; however, Plaintiff fails to set forth any facts that could possibly establish such a claim.  In order to state a claim against Oliver, Plaintiff must establish a causal connection between Oliver's actions, orders, customs, policies, or breach of a statutory duty and the alleged deprivation of his constitutional rights.  Boglin v. Weaver, No. CV-00-0620-CB-L, 2001 WL 228172, *14 (S.D. Ala. March 1, 2001).  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).  "Instead, supervisory liability under

_____

[5] By definition, only "persons" may be sued for a constitutional deprivation under § 1983.  42 U.S.C. § 1983 (1994).  In Will, 491 U.S. at 71, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" with regard to claims for damages.  Therefore, Oliver, in his official capacity, is not subject to suit for monetary damages under § 1983 for this reason as well.

§ 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id.

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted). Alternatively, the causal connection may be established when a supervisor's 'custom or policy … result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop then from doing so.'" Id. (citations and internal quotation marks omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. (citation omitted).

Plaintiff does not allege that Oliver was personally involved in the alleged denial of adequate medical care or in putting an offensive inmate in his cell momentarily. Nor does Plaintiff allege that Oliver had a custom or

policy which resulted in any deprivation of his constitutional rights, that he directed anyone at the jail to deprive him of adequate medical care or to put any particular inmate in his cell, or that he knew that his subordinates would act unlawfully toward Plaintiff.  Simply stated, Plaintiff has failed to state a claim against Oliver, and therefore, Oliver is entitled to summary judgment in his favor.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that Defendants' motion for summary judgment in their favor on any and all claims asserted against them by Plaintiff in this action is due to be **GRANTED** and the undersigned hereby recommends that any and all claims asserted against any Defendant named in the caption or in the body of the complaint be **DISMISSED.**

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this 24th day of January, 2013.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. §636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. §636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.